of its object. He appears there without surprise to the captain; and a supercargo is put on board at Halifax, who accompanies the ship to the West Indies. I think it is difficult to resist the impression, that there was something like preconcert in these circumstances; at least it throws a shade over the cause which has not been attempted to be removed.

In the next place the ship run down the whole eastern coast of the United States. The winds were very favorable for her to go into any eastern port to refit, yet no effort was made for this purpose, and no reason is assigned why it was not done. Surely no master of ordinary skill could, without cause, be guilty of so gross a misbehavior, as not to make a port in the United States, when so many lay in his way, and the strong injunctions of the law pressed upon him. There are some other striking singularities in the case, but I will not spend time in commenting upon them, because the foregoing, left as they are without explanation, would perhaps be decisive. But when we take into consideration the depositions introduced by the United States, of three of the crew, it is altogether unreasonable to expect, that the court could be free from doubt. Some exceptions have been taken to apparent incongruities and exaggerated statements made by some of the witnesses. Perhaps these exceptions are well founded; but admitting their force, still, taken with all their imperfections on their head, the depositions contain in general a substantial coincidence, as to material facts, which I must say are either corroborated, or not fully contradicted by the testimony on the other side. Now if these depositions are believed, there is no longer any doubt in the case; the justification is wholly unsupported. On the whole, I am satisfied that the decree of the district court ought to be reversed, and that the ship and appurtenances should be condemned, with costs, to the United States.

Condemned.

## Case No. 517.

### The ARGO.

[2 Gall. 314.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1814.[2]

DEPOSITION—NOTICE—ATTORNEY OF RECORD.

1. When there is an attorney of record, it is improper to take depositions without notice to him, or to the party.

2. When depositions are taken to be used against the United States, if there be an attorney of the United States within one hundred miles of the place of caption, he must be notified.

[See note at end of case.]

---

[1][Reported by John Gallison, Esq.]

[2][Affirmed by supreme court in The Argo, 2 Wheat. (15 U. S.) 287.]

This was an information for a violation of the non-intercourse law.

G. Blake, Dist. Atty., offered in evidence depositions, which had been taken in New York without notice, since there had been an attorney of record for the claimant.

[Before STORY, Circuit Justice, and SHERBURNE, District Judge.]

PER CURIAM. Though depositions thus taken have been usually received, there are certainly great objections to the practice; and the court have heretofore intimated a resolution to require notice to be given in all cases, where there is an attorney of record. To prove that the vessel had not been at Guadaloupe, as alleged in the information, the claimant produced the depositions of several of the crew, which appeared to have been taken in Boston, and elsewhere within one hundred miles of the residence of a district attorney, without notice to him. Upon objection by the district attorney, they were rejected for this cause, and the court observed, that in all cases, where there is an attorney of the United States residing within one hundred miles of the place of caption, notice must be given to him of the taking of depositions, to be used in any cause, in which the United States are a party.

[NOTE. The judiciary act of 1789, § 30, (1 Stat. 89,) required notice from the magistrate before whom the deposition is to be taken, to the adverse party or his attorney, "if either is within one hundred miles of the place of caption." See Dick v. Runnels, 5 How. (46 U. S.) 8. This provision was modified by the act of 1872, c. 146, (17 Stat. 89,) which requires "reasonable notice" in writing to the adverse party or his attorney. See Rev. St. § 863.]

## Case No. 518.

### The ARGONAUT.

[Blatchf. Pr. Cas. 62.][1]

District Court, S. D. New York. Oct., 1861.

PRIZE—NEUTRAL PROPERTY—BLOCKADED PORT.

1. Vessel and cargo restored as neutral property, on a lawful voyage, but without costs against the captors, there having been probable cause for the arrest, the vessel having attempted to enter a blockaded port to obtain the necessary supplies.

2. An excuse of that kind is looked upon with distrust by prize court.

In admiralty.

BETTS, District Judge. This cause was submitted to the decision of the court by counsel, on the pleadings and proofs, and a brief oral statement of the points in controversy.

The Argonaut was captured by the United States war steamer Susquehanna, September 13, 1861, off Hatteras inlet, and sent into this port in charge of a prize crew, and was libelled by the United States attorney as prize of war. The claimants filed separate

---

[1][Reported by Samuel Blatchford, Esq.]